1999 ME 18

### STATE of Maine

v.

### Jeffrey G. ANDERSON et al.

### State of Maine

v.

### Scott Ireland.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1999.

Decided Jan. 28, 1999.

**1232**

Andrew Ketterer, Atty. Gen., Joseph A. Wannamacher, Asst. Atty. Gen., Augusta, for State.

James P. Loring, Portsmouth, NH, for Anderson, Bridges, Melhorn & Mercier.

Thomas G. Van Houten, Sanford, for Ireland.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Jeffrey G. Anderson, Kevin S. Bridges, Bruce Melhorn, Suzanna M. Mercier, and Scott R. Ireland appeal from judgments entered on conditional guilty pleas pursuant to M.R.Crim.P. 11.[1] The pleas preserved for appeal defendants' challenge to an order by the District Court (York, *Levy, J.*) denying motions to suppress the results of breath analysis tests used to charge the defendants with operating under the influence of intoxicants or with an excessive blood alcohol level, in violation of 29–A M.R.S.A. § 2411 (1996 & Supp.1998).[2] The defendants argue that the State's failure to offer and to preserve a second breath sample violates their right to due process as guaranteed by the Maine Constitution.[3] Finding no viola-

---

1. M.R.Crim.P. 11 provides in relevant part:

With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional guilty plea. A conditional guilty plea shall be in writing. It shall specifically state any pretrial motion and the ruling thereon to be preserved for appellate review. If the court approves and the attorney for the state consents to entry of the conditional plea, they shall file a written certification that the record is adequate for appellate review and that the case is not appropriate for application of the harmless error doctrine. Appellate review of any specified ruling shall not be barred by the entry of the plea.

If the defendant prevails on appeal, the defendant shall be allowed to withdraw the plea.

2. Section 2411 provides in pertinent part:

**1. Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

**A.** While under the influence of intoxicants; or

**B.** While having a blood-alcohol level of 0.08% or more.

29–A M.R.S.A. § 2411 (1996 & Supp.1998).

3. Article I, Section 6 provides:

In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;

To demand the nature and cause of the accusation, and have a copy thereof;

To be confronted by the witnesses against him;

To have compulsory process for obtaining his witnesses in his favor;

To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity. He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land.

Me. Const. art. I, § 6. Article I, Section 6–A states:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof.

Me. Const. art. I, § 6–A.

tion of the defendants' due process, we affirm.

[¶ 2] In unrelated incidents, all of the defendants were charged with the offense of operating under the influence. Each defendant submitted to blood-alcohol testing through the Intoxilyzer 5000 (Intoxilyzer).[4] None of the defendants requested that an independent breath sample be preserved; the police did not offer to preserve a second sample, and the police did not inform the defendants that they could request the preservation of a second sample. The Intoxilyzer machines were not equipped to allow preservation of a second sample, although evidence presented indicated that they could be modified to do so at a cost of $1,000 per machine.

[¶ 3] Anderson, Bridges, and Mercier filed a motion to suppress the results of the Intoxilyzer. The District Court (York, *Levy, J.*) held a consolidated evidentiary hearing on their motions on July 22, 1997. Ireland and Melhorn also filed motions to suppress the Intoxilyzer results in their cases. On August 27, 1997, the District Court (Biddeford, *Janelle, J.*) granted Ireland's motion to join and consolidate. On September 25, 1997, the District Court (York, *Humphrey, J.*) granted Melhorn's motion to join and consolidate.

[¶ 4] Finding no due process violations, the District Court (York, *Levy, J.*) denied the motions to suppress on November 19, 1997. Based on the evidence presented at the hearing of July 22, 1997, the court found:

> [t]he testimony of Dr. Carolyn Howard, Ph.D., an analytical chemist, establishes that the Intoxilyzer 5000 is less accurate than the gas chromatography analysis she performs in her laboratory. The laboratory analysis, unlike the Intoxilyzer 5000, is able to distinguish ethyl alcohol from other volatile compounds such as methanol, toluene and ethers.... Because laboratory gas chromatography is more accurate than the Intoxilyzer 5000, Dr. Howard's analysis of 235 breath samples resulted in different test results in approximately 80% of the samples tested. However, deviations were of little legal significance because the number of samples which could be deemed as

"not corroborative" under evidentiary standards established by the State of New Hampshire, the jurisdiction in which Dr. Howard performs most of her work, was 2.55%.

[¶ 5] The cases then were transferred to Superior Court. On July 17, 1998, Anderson, Bridges, Melhorn, and Mercier entered conditional guilty pleas in Superior Court (York County, *Brennan, J.*). Ireland entered a conditional guilty plea in Superior Court (York County, *Fritzsche, J.*) on August 18, 1998. This appeal followed.

■ [¶ 6] This Court reviews rulings on motions to suppress for errors of law or clearly erroneous findings of fact. *See State v. Boyington,* 1998 ME 163, ¶ 7, 714 A.2d 141, 143; *State v. Stade,* 683 A.2d 164, 165 (Me.1996).

[¶ 7] Although this case is one of first impression in Maine, the United States Supreme Court addressed this issue in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). It ruled that due process under the United States Constitution does not require the preservation of breath samples for breath analysis test results to be admissible in cases involving operating under the influence charges. *See Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528. In rejecting the claim, the Court explained that the California authorities did not act in bad faith and that for a state to have a duty to preserve evidence, the evidence must possess an exculpatory value that is apparent before the evidence is destroyed and must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See Trombetta,* 467 U.S. at 488–90, 104 S.Ct. 2528; *see also Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), *reh'g denied,* 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989) (using refined three part test to determine whether failure to preserve evidence violated due process); *United States v. Femia,* 9 F.3d 990, 993 (1st Cir. 1993) (noting *Trombetta* and *Youngblood* establish tripartite test for determining whether state action violates due process).

---

4. The Intoxilyzer 5000 uses breath samples to measure the alcohol concentration in blood.

[¶ 8] The United States Supreme Court concluded that the evidence at issue in *Trombetta* did not meet either of the above conditions. First, it found that "in all but a tiny fraction of the cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test." *Trombetta,* 467 U.S. at 489, 104 S.Ct. 2528. Second, it explained that a defendant could demonstrate innocence by using alternative means, such as by challenging the calibration or operation of the machine. *See Trombetta,* 467 U.S. at 490, 104 S.Ct. 2528.

■ [¶ 9] Due process under the Maine Constitution does not require preservation of a second breath sample. This Court has held repeatedly that due process under the Maine Constitution provides no greater protection to individuals than does due process under the United States Constitution. *See, e.g., Fichter v. Board of Envtl. Protection,* 604 A.2d 433, 436 (Me.1992) ("State and federal due process requirements are identical." (citation omitted)); *Penobscot Area Hous. Dev. Corp. v. City of Brewer,* 434 A.2d 14 (Me.1981) ("This Court has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process." (citations omitted)).

[¶ 10] This Court's decision in *State v. Berkley,* 567 A.2d 915, 917–18 (Me.1989), indicates, contrary to the defendants' contention, that Maine follows the holding in *Trombetta.* In *Berkley,* the Court determined the State's duty to preserve evidence for criminal defendants under the state and federal constitutions. There, the State based its arson charge in part on chemical analysis of soil samples. The destruction of the soil samples prevented the defendant from obtaining them prior to trial.

[¶ 11] In ruling that the soil samples were admissible, the Court explained the defendant could have taken independent soil samples or presented evidence at trial to impeach the State's test results. *See Berkley,* 567 A.2d at 917–18. In reaching the decision, the *Berkley* Court used the test detailed in *Trombetta* and refined in *Young-*

*blood. See Berkley,* 567 A.2d at 918. It concluded:

In [*Youngblood* ], the United States Supreme Court further narrowed the circumstances under which nonpreservation of evidence will be found unconstitutional. Faced with a due process challenge ... the Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Accordingly, under *Trombetta* and *Youngblood* defendant has failed to establish a violation of his right to due process.

*Berkley,* 567 A.2d at 918 (citation omitted).

[¶ 12] Here, the defendants did not present evidence to show that they satisfy the test that the *Berkley* Court used. They presented no evidence that the police acted with bad faith and no other rational basis to distinguish *Trombetta.* Thus, they have failed to establish a violation of their right to due process under the Maine Constitution.

The entry is

Judgment affirmed.

